# KINSMAN v. KINTNER.

PATENTS; INTERFERENCE; DILIGENCE.

While every presumption will be resolved in favor of an inventor who delays filing his application until he has perfected his invention, a delay of ten years by a party after he has conceived his invention, during which time he was active in experimenting with other forms of inventions, took out several patents, and expended thousands of dollars in exploiting his inventions, constitutes such want of diligence as will preclude an award of priority to him, as against a rival who has in the meantime entered the field and filed an application.

No. 472. Patent Appeals. Submitted March 16, 1908. Decided May 5, 1908.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.          *Affirmed.*

The facts are stated in the opinion.

*Mr. Charles S. Champion* and *Mr. J. F. Heffernan* for the appellant.

*Mr. S. T. Fisher* and *Mr. Ernest Wilkinson* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

This is an interference proceeding involving improvements in block-system safety appliances for railways, in which an automatic power-controlling device carried by the vehicle is adapted to be actuated by a device upon a line of way when the track is obstructed to cut off the power and apply the brakes, and is expressed in the following counts:

"1. The combination with a line of way having a normally

closed electrical-controlling circuit, of a vehicle movable along said line of way, an automatic controller governing the movement of said vehicle, a trip on the line of way and movable into the path of said controller, and electrical trip-operating means of said line of way and included in said controlling circuit and operative for normally holding said trip out of action.

"2. The combination with a line of way and with a vehicle movable therealong, of an automatic controller governing the movement of said vehicle, a trip on the line of way and movable into the path of said controller, and a solenoid connected with said trip and electrically operative for normally holding said trip out of action.

"3. The combination with a line of way and with a vehicle movable therealong, of an automatic controller governing the movement of said vehicle, a trip on the line of way and movable into the path of said controller, electrical trip-operating means on said line of way and operative for normally holding said trip out of action, and a power device of another character for shifting said trip into action.

"4. The combination with a line of way and with a vehicle movable therealong, of an electrical controlling circuit, and an automatic controller governing the movement of said vehicle, a trip on the line of way and movable into the path of said controller, a signal device, and electrical means on said line of way and governed by said controlling circuit for operating said trip and signal device in harmony.

"5. In a system for controlling the movements of electrically operated railway vehicles, the combination with the power circuit, of a normally closed controlling circuit governed by the power circuit, and means for de-energizing said controlling circuit and automatically breaking the power circuit on the vehicle and applying a brake.

"6. In a system for controlling the movements of electrically operated railway vehicles, the combination with the power circuit of a normally closed controlling circuit governed by the power circuit, a track signal governed by the controlling circuit,

and means for de-energizing said controlling circuit and automatically stopping the vehicle."

The Examiner of Interferences and a majority of the Examiners-in-Chief and the Commissioner, in their decisions, awarded priority to Charles J. Kintner, the senior party, who relied solely upon his filing date as his date of conception and reduction to practice.

In his original preliminary statement filed April 25, 1905, Frank E. Kinsman, the junior party, alleges that he conceived the invention of the issue in the summer of 1890, and that he made drawings and disclosed the invention to others during that year and 1893. He does not claim that he ever made a model of the invention. His preliminary statement also contains the admission "that he has never embodied the whole of the invention constituting the subject-matter of this interference in a full-sized apparatus, but that he has embodied parts of the same in automatic train-stopping systems which have been successfully reduced to practice and used for long periods of time, such a system having been installed by him in the summer of the year 1890 on the Fitchburg Railroad, in Massachusetts, and used on said road for a considerable period of time."

It appears that Kinsman installed mechanism embracing parts of the subject-matter of counts 1, 2, and 3 of the issue upon the Fitchburg Railroad at Ayer Junction, Massachusetts, about 1890. This device, which was experimental in its nature, was found to be unsuccessful, and was discarded. Immediately thereafter a second device was installed which embodied the subject-matter of counts 1, 2, and 3 of this interference, and of count 4, except the signaling device. The second device was experimentally tested, and was found to be subject to objections. Kinsman testified that he did not consider it a good type of automatic train-stopping device for open country, for several stated reasons. This device followed the fate of the first, and was superseded by a third experimental system, which, however, did not involve the subject-matter of counts 1, 2, 3, and 4 of the issue. Kinsman testified that, at the termination of his experiments on the Fitchburg Railroad at Ayer Junction all equip-

ment which he installed in connection with those experiments "was removed and the larger part of it put into junk." Nothing further was ever done by Kinsman towards installing either the first or the second experimental equipments. He did, however, in 1892 and 1893, equip a few miles of the Chicago & Evanston Divison of the Chicago, Milwaukee, & St. Paul Railroad with an automatic stopping system of the fixed contact type last adopted at Ayer Junction, which system was used in regular service for several months, when it was taken out and discarded. The next evidence of activity on the part of Kinsman was the filing of his application herein·on December 1, 1903, which, it will be noted, was ten years after the experiments which it must be held he permitted to become abandoned. The evidence shows that during this time he was active in experimenting with other forms of inventions, and that he took out several patents during the interval between 1893 and the date of the filing of his application herein. It further appears that many thousands of dollars were expended during this period in exploiting his inventions.

The Examiner of Interferences, in referring to his lack of diligence, said: "If, however, it be granted that Kinsman had conceived the invention in 1893, which it is not, there is no sufficient showing of diligence in reducing such conception to practice. He was admittedly active in experimenting with other forms of invention along the same line, and took out several patents in the interval between 1893 and December, 1903. * * * In the present case the delay covers a period of more than ten years, during which time several patents were granted to Kinsman upon allied inventions, while there appears to have been no special effort to either actually or constructively reduce the invention stated in counts 5 and 6 of the issue to practice. He was not active at the time Kintner entered the field, April 14, 1903, and did not become active until about the time he filed his application, December 1, 1903. It must therefore be held that Kinsman was also lacking in diligence in reducing to practice the invention defined in counts 5 and 6."

The Examiners-in-Chief, in their opinion, in discussing Kins-

man's lack of diligence, said: "There is absolutely no evidence upon which to found a holding that Kinsman was diligent. While he filed his application less than eight months after Kintner, he was doing nothing with his invention when Kintner filed, and had been doing nothing for ten years."

The Commissioner, in his decision, also finds Kinsman lacking in diligence. "It is alleged that the state of Kinsman's health and his financial condition were such as to excuse his delay. It does not appear that either of these was the cause of his failure to do anything with this invention after the work at Ayer Junction. He was very busy about other forms of his invention, and a small part of the money which he expended thereon would have enabled him to have reduced the invention to practice, at least constructively."

As has many times been said, the object of the patent law is to foster and protect invention for the universal benefit of mankind, and, while every presumption will be resolved in favor of the inventor who delays filing an application until he has perfected his invention, the object of the law would be lost to view should we permit the displacement of an inventor who has given the world the benefit of his discovery, by one who has permitted his invention to lie dormant for a decade.

The decision of the Commissioner of Patents is affirmed, and the clerk of the court will certify this opinion and the proceedings in this court to the Commissioner of Patents, as required by law.                                    *Affirmed.*